IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Brunswick Division

| | | |
|---|---|---|
| DURANGO-GEORGIA PAPER COMPANY, DURANGO-GEORGIA CONVERTING CORP., and DURANGO-GEORGIA CONVERTING, LLC | ) ) ) ) ) | CHAPTER 11 CASE NUMBER 02-21669 |
| Debtors | ) ) | JOINTLY ADMINISTERED |
| _____ | ) ) | |
| DURANGO-GEORGIA PAPER COMPANY, DURANGO-GEORGIA CONVERTING CORP., and DURANGO-GEORGIA CONVERTING, LLC, BY AND THROUGH BRIDGE ASSOCIATES, LLC, AS LIQUIDATING TRUSTEE OF THEIR BANKRUPTCY ESTATES AND AS ADMINISTRATOR OF THE DURANGO-GEORGIA PAPER COMPANY PENSION PLAN FOR HOURLY EMPLOYEES | ) ) ) ) ) ) ) ) ) ) ) ) | ADVERSARY PROCEEDING NUMBER 04-02275 |
| Plaintiffs | ) ) ) | |
| vs. | ) ) ) | |
| H.G. ESTATE, LLC; THE HOWARD GILMAN FOUNDATION, INC., f/k/a GILMAN INVESTMENT COMPANY f/k/a GILMAN PAPER COMPANY; W.O. CORPORATION; GILMAN BUILDING PRODUCTS COMPANY; GILMAN BUILDING PRODUCTS, LLC; and MAXVILLE CORPORATION | ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| _____ | ) | |

**FILED**

at 10 O'clock & 40 min A M
Date 9/24/07

Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia

AO 72A
(Rev. 8/82)

## REPORT AND RECOMMENDATION

Before me is the Defendants' Motion to Dismiss Pension-Related Claim in the Second Amended Complaint filed by the Debtors through the chapter 11 trustee ("Trustee"). Defendants H.G. Estate, LLC; The Howard Gilman Foundation, Inc.; and W.O. Corporation (collectively, the "Movants") argue that Count II (the "Pension-Related Claim") fails to state a claim upon which relief can be granted and should be dismissed. I agree that the Pension-Related Claim should be dismissed, but because the issue raised is non-core, I cannot make that ruling. Instead, I submit this report and recommendation to the District Court as required under 28 U.S.C. § 157(c)(1).

## Background

This adversary proceeding and the underlying bankruptcy case arose out of the financial failure of a paper mill ("the Mill") that began operations in the early 1940's in St. Marys, Georgia. The story of the Mill, the fortunes of its successive corporate owners and their related entities, and the procedural events in the bankruptcy case were first detailed in the Complaint that initiated this adversary proceeding on November 18, 2004. A substantially similar recitation appeared in the First Amended, Re-Stated and Consolidated Complaint

("First Amended Complaint"), which was filed on May 19, 2005, as a result of the consolidation of two adversary proceedings and multiple contested matters.

I summarized that history in the Memorandum Opinion and Order of August 10, 2006, granting the Movants' motion for partial dismissal of claims, and thus do not recount it here. For the purposes of the Motion to Dismiss ("Motion") currently pending, necessary background includes only the following two allegations:

    (1)   The pension plan at issue in the Pension-Related Claim (the "Pension Plan") is a qualified plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (First Am. Compl. ¶ 59)

    (2)   The Movants were members of the Pension Plan sponsor's "controlled group," as defined by 29 U.S.C. § 1301(14), until after December 17, 1999, when the Mill was sold to Corporación Durango S.A. de C.V. in a stock purchase transaction (the "Durango Acquisition"). (Id. ¶¶ 59, 65, 85.)

The First Amended Complaint, like the original Complaint, alleged claims against the Movants for alter ego liability, pension plan indemnity, and environmental

indemnity.[1] The Movants requested dismissal of those claims on June 30, 2005. I granted the dismissal as to all three claims and all three Movants, dismissing the claim for alter ego liability with prejudice and the claims for pension plan indemnity and environmental indemnity without prejudice.

On October 20, 2006, the Trustee filed a Motion for Leave to Amend First Amended Complaint. I denied the Motion as to Count I for alter ego liability and granted it as to Count II for pension plan indemnity. Subsequently, on May 10, 2007, the Trustee filed the Second Amended Complaint, which re-pleaded Count II as the Pension-Related Claim and in addition incorporated the averments in the First Amended Complaint. On June 21, 2007, the Movants filed the Motion that is pending before me now.

Meanwhile, concurrent with this adversary proceeding, a related lawsuit was underway in the United States District Court for the Southern District of Georgia (the "District Court Case").[2] There, the Pension Benefit Guaranty Corporation ("PBGC")[3] and Debtor Durango Georgia Paper Company ("Durango

---

[1] The First Amended Complaint named three other Defendants in addition to the Movants and included a total of ten counts.

[2] *Pension Benefit Guar. Corp. v. Durango Georgia Paper Co.*, No. 2:05-CV-00153 (S.D. Ga. Dec. 20, 2006).

[3] The PBGC is a corporation wholly-owned by the United States government and established within the Department of Labor by 29 U.S.C. § 1302(a). The PBGC administers the pension plan termination insurance program established by Title IV of ERISA.

Georgia") as Pension Plan administrator were litigating the termination date of the Pension Plan in accordance with 29 U.S.C. § 1342.[4]

On February 8, 2006, the Movants intervened in the District Court Case and on September 25, 2006, sought to block its dismissal on joint motion of the PBGC and Durango Georgia, which together had negotiated and executed an agreement (the "Termination Agreement") terminating the Pension Plan effective March 1, 2004. On December 20, 2006, the District Court granted the joint motion to dismiss.[5] On February 1, 2007, the Movants filed a notice of appeal from that order and judgment to the United States Court of Appeals for the Eleventh Circuit.[6]

### The Pension-Related Claim

The Trustee alleges in the Second Amended Complaint that a principal purpose of the sale of the Mill was the evasion of present and future Pension Plan liabilities and that the Movants are jointly and severally liable under 29 U.S.C. §§

---

[4] 29 U.S.C. § 1342 gives the PBGC the authority to institute proceedings to terminate a single-employer pension plan whenever the PBGC determines that "the plan does not have assets available to pay benefits which are currently due under the terms of the plan." § 1342(a).

[5] Both the Termination Agreement and the Order of dismissal by the District Court were attached as exhibits to the Second Amended Complaint and thus are part of the pleadings in this adversary proceeding.

[6] Pension Benefit Guar. Corp. v. Durango Georgia Paper Co., appeal docketed, No. 07-10558 (11th Cir. Feb. 1, 2007).

1362 and 1369 for $55 million in Pension Plan underfunding. The Second Amended Complaint also includes an allegation incorporated by reference from the First Amended Complaint that "Defendants are liable to Plaintiffs for any amount by which the Debtors may be liable to the PBGC or to the Pension Plan participants for the deficiency between the fair value of the Plan and the projected benefit to be paid to the Plan Participants as of the termination date of the Pension Plan." (First Am. Compl. ¶ 115).

Section 1362 establishes liability for termination of a single-employer plan when the termination is instituted by the PBGC under § 1342:

> (a) In general . . .
>
> [A]ny person who is, on the termination date, a contributing sponsor of the plan or a member of such a contributing sponsor's controlled group shall incur liability under this section. The liability under this section of all such persons shall be joint and several. The liability under this section consists of—
>
> > (1) liability to the corporation [i.e., to the PBGC], to the extent provided in subsection (b) of this section, and
> >
> > (2) liability to the trustee appointed under subsection (b) or (c) of section 1342 of this title, to the extent provided in subsection (c) of this section.

29 U.S.C. § 1362(a). Section 1369 establishes predecessor liability:

> (a) Treatment of transactions to evade liability
>
> If a principal purpose of any person in entering into any transaction is to evade liability to which such person would be subject under this subtitle and the transaction becomes effective within five years before the termination date of the termination on which such liability would be based, then such person and the members of such person's controlled group (determined as of the termination date) shall be subject to liability under this subtitle in connection with such termination as if such person were a contributing sponsor of the terminated plan as of the termination date.

29 U.S.C. § 1369(a).

In addition to relying on §§ 1362 and 1369, the Trustee asserts standing to bring the Pension-Related Claim under 29 U.S.C. § 1370, which provides that

> [a]ny person who is with respect to a single-employer plan a fiduciary, contributing sponsor, member of a contributing sponsor's controlled group, participant, or beneficiary, and is adversely affected by an act or practice of any party (other than the corporation) in violation of any provision of section 1341, 1342, 1362, 1363, 1364, or 1369 of this title . . . may bring an action—
>
> (1) to enjoin such act or practice, or
>
> (2) to obtain other appropriate equitable relief (A) to redress such violation or (B) to enforce such provision.

29 U.S.C. § 1370(a) (emphasis added).

### Core Versus Non-Core

Jurisdiction over adversary proceedings in bankruptcy cases derives from 28 U.S.C. § 1334(b), which vests in the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The district court may refer any or all such proceedings to the bankruptcy judges for the district. 28 U.S.C. § 157(a). Bankruptcy judges may hear and enter orders in all proceedings referred by the district court, but may enter final orders and judgments only in "core" proceedings, defined as "proceedings arising under title 11, or arising in a case under title 11." § 157(b)(1). A non-exhaustive list of core proceedings is set out in § 157(b)(2).

A proceeding that is "related to" a bankruptcy case is a non-core proceeding. § 157(c)(1). In a non-core proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, which then enters a final order or judgment after considering the submission of the bankruptcy judge and after de novo review of any matters timely and specifically objected to by any party. § 157(c)(1). Notwithstanding the provisions of § 157(c)(1), a

bankruptcy judge may enter a final order in a non-core proceeding if all parties consent. § 157(c)(2). The issue of whether a proceeding is core or non-core is determined by the bankruptcy court, either on its own motion or on motion of a party. § 157(b)(3).

A core proceeding, under the "almost universally" accepted explanation, is a proceeding that "involves a right created by the federal bankruptcy law . . . . [or a proceeding] that would arise only in bankruptcy." Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo), 170 F.3d 1340, 1348 (11th Cir. 1999) (citing Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)). In a core proceeding, "the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law." Air Line Pilots Ass'n Int'l v. Pension Benefit Guar. Corp. (In re United Air Lines, Inc.), 337 B.R. 904, 909 (N.D. Ill. 2006) (citing In re U.S. Brass Corp., 110 F.3d 1261, 1268 (7th Cir. 1997)).

A proceeding is non-core if its outcome "could conceivably have an effect on the estate being administered in bankruptcy." Toledo, 170 F.3d at 1345 (quoting Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.) 901 F.2d 784, 788 (11th Cir. 1990). The word "conceivable" in this test makes the jurisdictional grant very broad. Id.

AO 72A
(Rev. 8/82)

Here, the Pension-Related Claim cannot be a core proceeding under § 157((b)(1), because the Trustee asserts a cause of action that arises under ERISA, not under the Bankruptcy Code. The Pension-Related Claim is instead a non-core proceeding, because if the Trustee were to prevail in this action, $55 million would be available for distribution to creditors, thus satisfying the requirement of a "conceivable" effect on the Debtors' estates and meeting the "related to" jurisdictional standard under § 1334(b).[7]

Because the Pension-Related Claim is non-core, I cannot enter a final order or judgment unless all parties consent under § 157(c)(2). The Movants do not consent to my entry of a final order (Mot. n.2). Dismissal under Rule 12(b)(6), made applicable here by F.R.B.P 7012, is a judgment on the merits. Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981). Accordingly, I offer the following analysis and conclusions for consideration by the District Court.[8]

---

[7] There is a concurrent grant of jurisdiction over the Pension-Related Claim in 29 U.S.C. § 1370, which the Trustee cites for standing under ERISA. See § 1370(c) (granting the district courts exclusive jurisdiction "of civil actions under this section"). This statutory grant does not divest the bankruptcy court of jurisdiction, because the bankruptcy court is "a 'unit' of the district court." Browning v. Levy, 283 F.3d 761, 779 (6th Cir. 2002) (quoting In re Frontier Airlines, Inc., 84 B.R. 724, 727 (Bankr. Colo. 1988)).

[8] I make no findings of fact, because a court considering a motion under Rule 12(b)(6) must take all allegations in the complaint as true and

**Motion to Dismiss**

The Movants successfully challenge the sufficiency of the Pension-Related Claim on two grounds, statutory and factual. According to the statutory argument, the Trustee has no cause of action under 29 U.S.C. §§ 1362 or 1369, and under § 1370 can seek only equitable relief, not money damages. According to the factual argument, even if the Trustee has a cause of action and can recover the damages pleaded, the Trustee has not pleaded facts sufficient to support a claim.

The Movants also assert a third argument, that the Pension-Related Claim is untimely. This argument is without merit, and I address it first.

**I.**

*Timeliness of the Pension-Related Claim*

One of the elements of a cause of action for predecessor liability under § 1369 is that a transaction to evade pension plan liability "become[] effective within five years before the termination date of the termination on which such liability would be based." § 1369(a). If the termination date falls within that five-year window, the "person" entering

---

consider them in the light most favorable to the plaintiff. Peterson v. Atlanta Hous. Auth., 998 F.2d 904, 912 (11th Cir. 1993).

AO 72A
(Rev. 8/82)

into that transaction and the members of that person's controlled group as of the termination date are subject to liability "as if such person were a contributing sponsor of the terminated plan as of the termination date." Id. This provision thus subjects former sponsors of a pension plan to the same liability that applies under § 1362 to a contributing sponsor on the date the plan terminates.

The Movants assert that "the termination date of the termination" was September 11, 2006, the date on which the PBGC and Durango Georgia signed the Termination Agreement. Accordingly, the Movants argue, more than five years elapsed between the date of the Durango Acquisition on December 17, 1999, and the date of the termination of the Pension Plan, making the Pension-Related Claim untimely.

However, contrary to the Movants' argument, the Pension Plan terminated on March 1, 2004, the date established by the PBGC and Durango Georgia in the Termination Agreement. The issue of the authority of the PBGC and Durango Paper to fix the termination date was fully litigated and resolved as a result of the Movants' intervention in the District Court Case. Collateral estoppel thus applies. Moreover, even if collateral estoppel did not apply, the statutory language is plain that the termination date is the date "established by the [PBGC] and agreed to by the plan administrator." § 1348(a)(3).

The doctrine of collateral estoppel, or issue preclusion, bars the relitigation of an issue that was resolved in an earlier proceeding. Fleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998). Four conditions must be present for collateral estoppel to apply:

> (1) the issue at stake is identical to the one involved in the prior proceeding;
>
> (2) the issue was actually litigated in the prior proceeding;
>
> (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and
>
> (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

Id. (citing I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir. 1986). Collateral estoppel applies regardless of the pendency of an appeal. Erebia v. Chrysler Plastic Prods. Corp., 891 F.2d 1212, 1215, n.1 (6th Cir. 1989).

Here, all four conditions for collateral estoppel are met. First, the issue at stake is identical to the issue raised by the Movants in their intervention in the District Court Case. There, as here, the Movants argued that Durango Georgia and the PBGC did not have the authority to agree to a termination date for the Pension Plan. Pension Benefit Guar. Corp. v. Durango Georgia Paper Co., No. 2:05-cv-00153, at 4

(S.D. Ga. Dec. 20, 2006) ("Contrary to the Intervenors' argument, the law does not preclude the plan administrator and the PBGC from reaching an agreement as to the termination date . . . ."). Second, that issue was actually litigated; and third, it was "a critical and necessary part" of the judgment, the Order of the District Court stating outright that the Movants "have no right to impede establishment of the termination date." Id. at 5. Fourth, the Movants had a full and fair opportunity to litigate the issue, the District Court having vacated its initial order of dismissal on motion of the Movants as intervenors, having heard oral argument, and having permitted the Movants to file a substantive response opposing the motion to dismiss. Id. at 3. Collateral estoppel thus applies, making March 1, 2004, the "termination date of the termination" of the Pension Plan under § 1369.

Regardless of any preclusive effect of the District Court case, the statute itself plainly states that "[f]or purposes of this subchapter the termination date of a single-employer plan is . . . (3) in the case of a plan terminated in accordance with the provisions of section 1342 of this title, the date established by the corporation and agreed to by the plan administrator." § 1348(a)(3). When Congress expresses its intent clearly and unambiguously, the plain language of the statute is both the beginning and the end of the judicial

inquiry. <u>United States v. Ron Pair Enters., Inc.</u>, 489 U.S. 235, 241 (1989). Thus the Pension Plan terminated on the date established by the PBGC and Durango Georgia in the Termination Agreement, on March 1, 2004.

Because less than five years elapsed between the date of the Durango Acquisition on December 17, 1999, and the termination of the Pension Plan on March 1, 2004, the Movants are subject to predecessor liability under § 1369 in the same way a contributing sponsor would be liable under § 1362. However, as a matter of law, the Movants cannot be liable to the Trustee under either section.

## II.

### §§ 1362 and 1369

Liability of a contributing sponsor under § 1362, which is extended to predecessors under § 1369, consists only of liability to the PBGC and to the trustee appointed to administer the pension plan. § 1362(a)(1)-(2). The PBGC and the plan administrator may agree to the appointment of a trustee. § 1342(c). Here, the PGBC and Durango Georgia agreed in the Termination Agreement that the PBGC would be appointed trustee of the Pension Plan. (Termination Agreement at 1, Statement of Agreement, ¶ 3.) Accordingly, any liability under § 1362 as applied to the Movants under § 1369 would be to the PBGC. The

Trustee thus has no cause of action against the Movants under §§ 1362 or 1369.

## § 1370

Not only does the Trustee have no cause of action under §§ 1362 or 1369, the Trustee also has no right of recovery under § 1370, because the Trustee seeks money damages, not equitable relief. Further, even if the Trustee's claim were characterized as equitable, the claim is unripe. Finally, the Trustee shows that even if the Pension-Related Claim were amended to request "appropriate equitable relief," § 1370(a)(2), the resulting claim would be so speculative as to require dismissal.

A contributing sponsor or member of a contributing sponsor's controlled group that is "adversely affected by an act or practice of any party" in violation of § 1369 may seek an injunction against that act or practice or "other appropriate equitable relief" to redress the violation. § 1370(a)(1)-(2). Money damages are "the classic form of legal relief" and as such are not "other appropriate equitable relief" under ERISA. Mertens v. Hewitt Assocs., 508 U.S. 248, 255-257 (1993). "Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for

AO 72A
(Rev. 8/82)

16

'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 210 (2002) (quoting <u>Bowen v. Massachusetts</u>, 487 U.S. 879, 918-19 (1988) (Scalia, J., dissenting)).

A claim is legal or equitable depending on the basis of the claim and "the nature of the underlying remedies sought." <u>Popowski v. Parrott</u>, 461 F.3d 1367, 1372 (11th Cir. 2006) (quoting <u>Knudson</u>, 534 U.S. at 213). Here, the Trustee seeks money damages of $55 million. The Trustee insists that this remedy is equitable "in the nature of exoneration, indemnity, restitution, or contribution on account of Plaintiffs' alleged liability to the PBGC under the proofs of claim filed by the PBGC in the case." (Pls.' Resp. & Br. 13).[9] To the contrary, the nature of the relief sought is legal, not equitable.

For restitution to lie in equity, the plaintiff must seek restoration of identifiable funds or property in the possession of the defendant. <u>Knudson</u>, 534 U.S. at 214. The Trustee has not asserted that the Movants possess identifiable

---

[9] The parties' briefs are not considered matters outside the pleadings in a motion to dismiss under Rule 12(b)(6). <u>Concordia v. Bendekovic</u>, 693 F.2d 1073, 1075 (11th Cir. 1982) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 (1969)).

funds that properly belong to the Trustee. Consequently, the Trustee has not alleged an equitable claim for restitution.

Further, a cause of action for contribution or indemnity is not ripe until there has been either a determination of liability or a settlement that establishes the plaintiff's obligation to pay. Armstrong v. Ala. Power Co., 667 F.2d 1385, 1388 (11th Cir. 1982). Here, the PBGC's claims in the underlying case are still in dispute.[10] Consequently, the Trustee's obligation to the PBGC has not been established, and any claim against the Movants for indemnity or contribution is thus unripe.

Finally, the Pension-Related Claim would fail even if the Trustee were granted leave to amend to include a prayer for equitable relief. The resulting claim would be entirely conjectural, based on the Trustee's own articulation of what the Plaintiffs apparently actually seek, but did not plead: "[T]he purpose of Plaintiffs' Complaint will be served by a determination that the Defendants are jointly and severally liable to the PBGC for the [Pension Plan] termination liability and that any resulting claim from a full or partial payment by the Defendants of such claim be subordinated to general

---

[10] Two of the original nine claims filed by the PBGC are in dispute: "(i) Claim No. 1576 for any unpaid pension plan premiums accruing prior to September 11, 2006, the date the PBGC took over trusteeship of the Pension Plan; and (ii) Claim No. 1581 for the unfunded benefit liabilities of the Pension Plan." (Joint Stipulation for the Withdrawal of Claims, filed July 12, 2007, ¶ 9).

unsecured claims." (Pls.' Resp. & Br. 13). The claim the Trustee envisions will not even arise unless and until the PBGC obtains a judgment of joint and several liability under § 1369 against the Movants, the Movants pay the judgment, and the Movants then seek contribution from the estate. Further, the PBGC's claims in the underlying case must be resolved before any of the Trustee's scenario could possibly unfold. A court cannot determine liability for a claim that may or may not arise in the future and is contingent on a chain of events that have not even begun to occur.

### III.

#### *Factual Sufficiency of the Complaint*

When ruling on a motion to dismiss, the court must construe the pleadings broadly and view the allegations in the complaint in the light most favorable to the plaintiff. Watts v. Fl. Int'l Univ., 2007 WL 2331029, at *5 (11th Cir. 2007). Although detailed factual allegations are not required to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead more than "labels and conclusions." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65. (2007). "[A] formulaic recitation of the elements of a cause of action will not do." Id. at 1965. Under the pleading standard articulated in Twombly, the complaint must contain enough facts to create

"plausible grounds" to infer the elements of the plaintiff's cause of action. Id. The allegations must "plausibly suggest[]," not merely be consistent with, the elements the plaintiff must prove. Id. at 1966.

Here, if the Pension-Related Claim did not fail on other grounds, the Trustee would be required to plead facts supporting predecessor liability under § 1369. The elements of § 1369 as applied to the Pension-Related Claim are that (1) the Pension Plan terminated within five years of the Durango Acquisition, and (2) "a principal purpose" of the Durango Acquisition was the Movants' evasion of liability for Pension Plan underfunding. See § 1369(a).

The Trustee has satisfied the first element, the Pension Plan having terminated on March 1, 2004, within five years of the Durango Acquisition on December 17, 1999. However, the Trustee has not pleaded facts from which the second element can be plausibly inferred.

The Second Amended Complaint incorporates by reference thirty-four paragraphs of factual allegations detailed over approximately ten pages of the First Amended Complaint. The Trustee argues that these allegations, taken together and considered as true, are more than sufficient to support the conclusion that a primary purpose of the Movants in

the Durango Acquisition was to avoid Pension Plan liability. However, the Trustee confuses quantity with relevance.

For example, the Trustee's brief highlights allegations asserting that the corporate restructuring preceding the Durango Acquisition was undertaken to eliminate the Movants' exposure to Pension Plan liabilities. (Pls.' Resp. & Br. 7-8) However, since all of the entities involved in the restructuring would already have been members of the Pension Plan controlled group as defined in § 1301(14)(A), and since § 1369(b)(1)-(3) explicitly preserves liability after corporate reorganizations, it is not clear how such restructuring could have been designed to insulate the Movants from liability.

The Trustee does not plead that the Pension Plan was not funded when it was under the Movants' control, and in fact affirmatively pleads that the Pension Plan was funded both prior to the corporate restructuring and up until the Durango Acquisition (First Am. Compl. ¶ 65). Nor does the Trustee plead any of the facts proved in the case cited in ¶ 115 of the First Amended Complaint, Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 215 F.3d 407 (3rd Cir. 2000). In White, the defendant was liable under § 1369 based on the following facts: (1) that the pension plan was "grossly underfunded," (2) that the company was sold for no cash value to an insider, and (3)

that the selling company funded the pension plan for five years. Id. at 410.

Here, the Trustee does not dispute that the Debtors were sold in an arms-length transaction for $119.5 million. There is no allegation that the Movants continued to fund the Pension Plan after the Durango Acquisition. Moreover, the Trustee pleads that Howard Gillman's will directed his executors to sell his businesses. (First Am. Compl. ¶ 69).

At the end of the day, the Trustee has pleaded only that the Pension Plan was underfunded and that a principal purpose of the Durango Acquisition was the Movants' desire to evade Pension Plan liability, the second allegation merely stating an element of a cause of action under § 1369. A formulaic recitation of an element of predecessor liability under § 1369 and an allegation of pension plan underfunding, without more, does not "plausibly suggest" that the Trustee is entitled to relief. See Twombly, 127 S.Ct. at 1966. I conclude that the Trustee has not pleaded enough facts to withstand a motion to dismiss, even if the Pension-Related Claim did not fail on other grounds.

This conclusion is supported by an opinion letter issued by the PBGC on the subject of pension plan predecessor

AO 72A
(Rev. 8/82)

liability shortly after the passage of § 1369.[11] See PBGC Op. Letter No. 86-16 (July 31, 1986) http://www.pbgc.gov/oplet/86-16.pdf. According to Opinion Letter 86-16, § 1369 would not appear to apply to an arms-length sale of a subsidiary for fair market value, even when the pension plan was underfunded, when 30% of the net worth of the buyer immediately after the closing exceeded the amount of unfunded benefit commitments. Id.

Here, there is no allegation as to the net worth of the buyer in the Durango Acquisition. However, the scenario is otherwise identical to the facts before me now: an arms-length transaction for value and an underfunded Pension Plan. The implication of Opinion Letter 86-16 is that the PBGC as the only party with standing to sue the Movants under § 1369 would not under the present facts seek to hold the Movants liable. In fact, the PBGC has to date neither filed a motion to intervene in this adversary proceeding nor filed a complaint against the Movants in the Southern District of Georgia.

### Conclusion

The Trustee has no cause of action under 29 U.S.C. § 1362 or § 1369 and has not sought equitable relief as required

---

[11] Although opinion letters issued by government agencies are not binding authority, they are "entitled to respect 'to the extent that th[e] interpretations have the 'power to persuade.'" Bank of New York v. Janowick, 470 F.3d 264, 269 (6th Cir. 2006) (quoting Christensen v. Harris County, 529 U.S. 576, 587 (2000)).

under § 1370. Further, even if the Trustee had a cause of action and could recover the damages pleaded, the Trustee has not pleaded facts sufficient to support an entitlement to relief.

Accordingly, I respectfully recommend that the District Court revoke the reference as to the Motion to Dismiss Pension-Related Claim under Count II of the Second Amended Complaint and that the Motion be granted.

John S. Dalis
United States Bankruptcy Judge

Dated at Brunswick, Georgia, this _2/__ day of September, 2007.

AO 72A
(Rev. 8/82)